**MOT**
ERICK M. FERRAN, ESQ**.**
Nevada State Bar No. 9554
HITZKE & FERRAN LLP.
2110 East Flamingo Road, Suite 206
Las Vegas, Nevada 89119
*Telephone No.: (702) 476-9668*
*Facsimile No.: (702) 462-2646*
*erick.ferran@hitzkelaw.com*
*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | **CASE NO.: 2:24-cr-00229-APG-NJK** |
| Plaintiff, | **Unopposed Motion to Modify Conditions of Pretrial Release** |
| vs. | |
| TIMOTHY THURTLE, | |
| Defendant. | |

CERTIFICATION: This Motion was timely filed pursuant to LCR 12(b)(3).

Defendant Timothy Thurtle, by and through his counsel of record, Erick M. Ferran, Esq., from the law office of HITZKE & FERRAN LLP., and files this instant Unopposed Motion to Modify Conditions of Pretrial Release.[1]

This Motion is made and based upon all the papers and pleadings on file herein, the attached Declaration of Counsel, the Memorandum of Points and Authorities, and any additional oral argument taken at the time set hearing this Motion.

DATED this 25TH day of November 2024.

**HITZKE & FERRAN LLP.**

/s/ Erick M. Ferran, Esq.
ERICK M. FERRAN, ESQ**.**
Nevada State Bar No. 9554
2110 East Flamingo Road, Suite 206
Las Vegas, Nevada 89119
*Attorneys for Defendant*

---

[1] Following additional communication with Assistant United States Attorney Lauren Ibanez, this Motion is being refiled *Unopposed.*

## MEMORANDUM OF POINTS AND AUTHORITIES

### A. Procedural History

On or about October 8, 2024, a Grand Jury was convened and ultimately returned a True Bill on an Indictment against Defendant, Timothy Thurtle, charging him with one count of Possession of a Firearm by a Prohibited Person, a violation of 18 U.S.C. §§ 922(g)(l) and 924(a)(8). ECF No. 1. The Indictment alleges that on or about April 10, 2024, Mr. Thurtle, while in the District of Nevada and knowing that he had been previously convicted of crimes punishable by imprisonment for a term exceeding one year, to wit: Theft, on or about March 22, 2004, in Clark County, Nevada under case number Cl78292; and Assault with a Deadly Weapon, on or about June 5, 2007, in Clark County, Nevada under case number C230919; did knowingly possess a firearm, to wit: Springfield Armory Hellcat, 9mm pistol bearing serial number: BY257031, said possession being in and affecting interstate commerce and said firearm having been shipped and transported in interstate commerce, all in violation of Title 18, United States Code, Sections 922(g)(l) and 924(a)(8).

### B. Factual Background

Ultimately, Mr. Thurtle was arrested on or about November 8, 2024, and was arraigned on November 12, 2024, before the Honorable Maximiliano D. Couviller, III. ECF No. 5. Following oral arguments made by the United States as well as the undersigned, and after consideration of recommendations from the United States Pretrial Services Office, Mr. Thurtle was released on an Appearance Bond with the following special conditions: 1) Submit to supervision by and report for supervision to the U.S. Pretrial Services Office; 2) Continued to actively seek employment; 3) Not possess a firearm, destructive device, or other weapon; 4) Have no contact, directly or indirectly, with known or suspected outlaw motorcycle gang members. ECF No. 6

Mr. Thurtle has complied with each and every condition imposed on him and has not incurred a single violation since being released to pretrial services. He successfully completed the intake, and pretrial services is currently scheduled to complete a home visit on or about November 27, 2024.

As is customary, the parties are in disagreement about the operative facts underlying the present case. That being said, the instant motion seeks to address Condition #4 of this Court's release order, specifically that he have no contact, directly or indirectly, with known or suspected outlaw motorcycle gang members. Though the term "outlaw motorcycle gang members" is somewhat vague, Defendant brings this motion in an abundance of caution because the source of his self-employment is a venture that will involve and include individuals that the Government might argue would be prohibited persons under the Court's release order. It should be noted that this motion in no way seeks permission for Mr. Thurtle to be involved in any social club activities or to be present at any "club" events. He merely seeks permission to continue to engage in his employment, as he is a part owner of the company in question and as he uses a diverse labor force that includes many different types of laborers.

## I.   ARGUMENT

Mr. Thurtle has complied with and will continue to comply with all special conditions imposed upon him. However, Mr. Thurtle is the operations and logistics officer for his own small business, TCB Productions LLC, which is duly licensed in the State of Nevada. Some of the employees of TCB would likely be identified by the United States as members and/or associates of the Pagans Motorcycle Club as well as others. Again, this motion in no way seeks any authority or permission to engage in "club" activities or to participate in social club events. It only seeks permission for Mr. Thurtle to continue to conduct his business, which is similar to many other businesses here in Clark County that engage in setting up and erecting as well as taking down displays for conventions and shows that come into the Clark County Nevada area (as well as other regions as the business grows).

Upon reviewing the Indictment and the discovery materials provided the undersigned by the Government, the instant charge against Mr. Thurtle *does not* include nor does it induce that his alleged crime is at all related to his association with any motorcycle club, or that any member of an outlaw motorcycle gang was involved with the instant alleged offense. The company, TCB Productions LLC., is responsible for constructing booths and displays for events throughout the country. Mr. Thurtle's primary role with the company is coordinating, scheduling, and

dispatching employees to convention centers across the country to construct, maintain, and tear down convention booths and displays. The special condition imposed upon Mr. Thurtle which prohibits his contact with known and/or suspected outlaw motorcycle gang members has severely impacted and will continue to impact not only the company itself but Mr. Thurtle's and his family's financial stability. As such, Mr. Thurtle respectfully requests that this Honorable Court modify the pretrial release conditions pertaining to Mr. Thurtle's release so that he may continue to participate in the operation of his small business. Ultimately, Mr. Thurtle is prepared to stipulate to not participating in and/or contacting (outside the purposes of business) known and/or suspected members of the club. This would include social gatherings and/or club events and meetings. To that end, the undersigned has been in contact with Mr. Thurtle's Pre-Trial Supervision Officer, Samira Barlow, who informed the undersigned that she would defer to the Court related to the modification of this condition but did not specifically oppose the same.

While TCB Productions LLC., has only been in existence since September 12, 2024, they have been extremely successful in a rather short period of time in securing several contracts throughout the country, including Chicago, Dallas, Miami, Anaheim, Los Angeles, New York, and others. Furthermore, they are duly licensed with the Nevada Secretary of State, *See* Exhibit A, and just recently executed a lease for warehouse space located at 6250 East Tropical Parkway, North Las Vegas, Nevada 89115. *See* Exhibit B. While understandably, this Court may have concerns with Mr. Thurtle's interaction with known and/or suspected outlaw motorcycle club members, the business itself is in good standing, and financial records are available to further demonstrate its legal and legitimate business practices. This motion is filed in an abundance of caution, as Mr. Thurtle would in no way make any attempt to disrespect or disobey the Court's Order. Additionally, the undersigned will further seek a stipulation from the United States regarding modification of this condition.

## II.    LEGAL STANDARD

Pretrial detention decisions are guided by the Bail Reform Act. *See* 18 U.S.C. § 3142. Where neither release on a full personal recognizance bond nor detention are warranted, the Court is tasked with imposing the least restrictive release conditions that will "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B); *see* also *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). Such restrictions may include, *inter alia*, limits on association with others. 18 U.S.C. § 3142(c)(1)(B)(iv). The factors to be considered in determining whether there are appropriate conditions of release include: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drugs and alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to another person or the community posed by defendant's release. 18 U.S.C. § 3142(g).

Neither the Bail Reform Act nor the Federal Rules of Criminal Procedure establish procedures or standards for modification of pretrial conditions. Instead, the governing provision indicates simply that the Court "may at any time amend the order to impose additional or different conditions of release." 18 U.S.C. § 3142(c)(3). As the word "may" connotes, the Court is vested with "broad . . . discretionary power" in deciding a motion to modify conditions of pretrial release. *See United States v. McGill*, 604 F.2d 1252, 1255 (9th Cir. 1979); *see* also *United States v. Cook*, 428 F.2d 460, 461 (5th Cir. 1970) (per curiam). Courts have routinely held that a motion to modify conditions of pretrial release amounts to a motion to reopen the detention hearing. *See United States v. Phua*, No. 2:14-cr-00249-APG-PAL, 2015 U.S. Dist. LEXIS 4688, 2015 WL 127715, at *1-2 (D. Nev. Jan. 8, 2015); *see* also, e.g., *United States v. Gay*, No. 4:20-cr-40026-JES-JEH, 2020 U.S. Dist. LEXIS 187439, 2020 WL 5983880, at 3 (C.D. Ill. Oct. 7, 2020). Hence, a motion to modify conditions of pretrial release is subject to a threshold requirement of showing that "new information exists that was not previously known or presented at the detention hearing." *Phua*, 2015 U.S. Dist. LEXIS 4688, 2015 WL 127715, at 2; *see* also 18 U.S.C. § 3142(f).3 Indeed, a different approach would lead to absurd results, including that "a [d]efendant could file endless

petitions to modify his conditions.... Courts do not ordinarily allow parties to file a motion previously denied over and over again, yet without the threshold showing required in Section 3142(f)(2), nothing in the statute precludes a defendant from doing so...." *Gay*, 2020 U.S. Dist. LEXIS 187439, 2020 WL 5983880, at 3.

A number of decisions provide further guidance regarding evaluation of motions to modify conditions of pretrial release. Case law abounds that a defendant's compliance with the current conditions of pretrial release is not in and of itself grounds to modify those conditions:

> It is presumed that the defendant will abide by the conditions imposed and his demonstrated ability to do so is what allows him to remain on pretrial release. The fact that Defendant has complied with his conditions of release is what allows him to remain out of custody and is not new information that has a material bearing on his conditions to reopen the detention hearing.

*United States v. Kube*, No. 1:19-cr-00257-NONE-SKO, 2020 U.S. Dist. LEXIS 73737, 2020 WL 1984178, at 5 (E.D. Cal. Apr. 27, 2020) (citing *United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989)); *see also United States v. Esposito*, 354 F. Supp. 3d 354, 360-61 (S.D.N.Y. 2019); *United States v. Ross*, No. 3:23-c4-128-TAV-JEM, 2024 U.S. Dist. LEXIS 78717, 2024 WL 1890087, at 4 (E.D. Tenn. Apr. 30, 2024); *United States v. Chambers*, No. 23-20009-DDC, 2023 U.S. Dist. LEXIS 212961, 2023 WL 8254523, at 2 (D. Kan. Nov. 29, 2023); *United States v. Johnson*, No. 2:21-cr-00707-WJM, 2022 U.S. Dist. LEXIS 22736, 2022 WL 375319, at 2 (D.N.J. Feb. 8, 2022); Gay, 2020 U.S. Dist. LEXIS 187439, 2020 WL 5983880, at 3; *United States v. Anderson*, No. 18 CR 50034-1, 2020 U.S. Dist. LEXIS 113607, 2020 WL 3545619, at 3 (N.D. Ill. June 30, 2020). It is also axiomatic that the emergence of a circumstance giving rise to a desire to modify conditions is not new information material to the release conditions regarding flight or dangerousness. *See Phua*, 2015 U.S. Dist. LEXIS 4688, 2015 WL 127715, at 2 (rejecting new information consisting of a desire for more places to shop, eat, attend shows, and play poker); *see* also *Ross*, 2024 U.S. Dist. LEXIS 78717, 2024 WL 1890087, at 4 (collecting cases that the inconvenience of conditions is not new or material information sufficient to modify those conditions); *Johnson*, 2022 U.S. Dist. LEXIS 22736, 2022 WL 375319, at 3 (the defendant's desire to visit colleges with his daughter was not new or material information sufficient to modify travel conditions). "Of course[,]

conditions will impact a defendant's ability to engage in activities . . . that is why the Bail Reform Act requires that any conditions imposed be the 'least restrictive' to achieve the purposes of the conditions." *Gay*, 2020 U.S. Dist. LEXIS 187439, 2020 WL 5983880, at 3. Moreover, the new information presented must not have been known or readily available to the defendant at the time of the detention hearing. *See, e.g., United States v. Smith*, No. CR-12-1298-PHX-GMS (ECV), 2012 U.S. Dist. LEXIS 124187, 2012 WL 3776868, at 4 (D. Ariz. Aug. 31, 2012); *see* also *United States v. Peguero*, No. 3:21-cr-00010-RGJ-3, 2021 U.S. Dist. LEXIS 198147, 2021 WL 4811315, at 3 (W.D. Ky. Oct. 14, 2021) (that the defendant had an elderly parent in declining health was not new information for purposes of modifying pretrial conditions).

In the instant case, Defendant seeks only to continue to engage in legitimate work conduct. His business structure may include individuals that the United States would find as violative of the referenced special condition, and, accordingly, Mr. Thurtle wants to ensure that prior to continuing to engage in his business that he has the permission of the Court. Mr. Thurtle's venture is the main source of his income and was recently developed apparently at the same time as the United States was procuring its indictment. His only desire is to be able to continue to work and provide for his family while the instant case is litigated.

## <u>CONCLUSION</u>

For the aforementioned reasons, the undersigned on behalf of Mr. Thurtle, respectfully requests that this Honorable Court grant the relief sought herein.

DATED this 25TH day of November 2024.

**HITZKE & FERRAN LLP.**

/s/ Erick M. Ferran, Esq.
ERICK M. FERRAN, ESQ**.**
Nevada State Bar No. 9554
2110 East Flamingo Road, Suite 206
Las Vegas, Nevada 89119
*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I am an attorney of counsel with HITZKE & FERRAN LLP., and that on this 25TH day of November 2024, I did cause a true and correct copy of:

**UNOPPOSED MOTION TO MODIFY CONDITIONS OF PRETRIAL RELEASE**

to be served via electronic service by the U.S. District Court CM/ECF system to the parties on the Electronic Filing system in this action, including:

Lauren Ibanez, Esq.
Assistant United States Attorney
United States Attorney's Office
501 South Las Vegas Boulevard
Las Vegas, Nevada 89101
Lauren.Ibanez@usdoj.gov

<u>/s/ Erick M. Ferran, Esq.</u>
*An employee of Hitzke & Ferran LLP.*

# EXHIBIT A

## Entity Information

### Entity Information

**Entity Name:**

TCB PRODUCTIONS LLC

**Entity Number:**

E43252832024-1

**Entity Type:**

Domestic Limited-Liability Company (86)

**Entity Status:**

Active

**Formation Date:**

09/12/2024

**NV Business ID:**

NV20243199803

**Termination Date:**

**Annual Report Due Date:**

9/30/2025

**Compliance Hold:**

**Series LLC:**

☐ **Restricted LLC:** ☐

### Registered AGENT INFORMATION

**Name of Individual or Legal Entity:**

BD & ASSOCIATES CPAS PLLC

**Status:**

Active

**CRA Agent Entity Type:**

**Registered Agent Type:**

Commercial Registered Agent

**NV Business ID:**

NV20111391812

**Office or Position:**

**Jurisdiction:**

NEVADA

**Street Address:**

1671 W. HORIZON RIDGE PKWY STE 220, HENDERSON, NV, 89012, USA

**Mailing Address:**

---

**OFFICER INFORMATION**

☐ **View Historical Data**

| Title | Name | Address | Last Updated | Status |
|-------|------|---------|--------------|--------|
| Manager | Keith Alessi | 6807 W Gary Ave, Las Vegas, NV, 89139, USA | 09/12/2024 | Active |

Page 1 of 1, records 1 to 1 of 1

Filing History          Name History          Mergers/Conversions

Return to Search          Return to Results

# EXHIBIT B



**NEVADA**

## STANDARD INDUSTRIAL/COMMERCIAL MULTI-TENANT LEASE - GROSS

1. **Basic Provisions ("Basic Provisions").**

    1.1 **Parties.** This Lease ("**Lease**"), dated for reference purposes only ___11/8/24___ , is made by and between ___Venture Point LLC, a Nevada Limited Liability Company___ ("**Lessor**") and ___TCB Productions LLC, a Nevada Limited Liability Company___ ("**Lessee**"), (collectively the "**Parties**", or individually a "**Party**").

    1.2(a) **Premises:** That certain real property, including all improvements therein or to be provided by Lessor under the terms of this Lease, commonly known as (street address, unit/suite, city, state, zip): ___6250 E. Tropical Pkwy., North Las Vegas NV., 89115___ ("**Premises**"). The Premises are located in the County of ___Clark___ , and are generally described as (describe briefly the nature of the Premises and the Project"): ___An industrial unit consisting of approximately 11,180 square feet which is part of a larger industrial park. APN 123-27-210-002. Tenant shall take possession of the Premises " AS IS, WHERE IS, with all faults latent and patent"___ . In addition to Lessee's rights to use and occupy the Premises as hereinafter specified, Lessee shall have non-exclusive rights to any utility raceways of the building containing the Premises ("**Building**") and to the Common Areas (as defined in Paragraph 2.7 below), but shall not have any rights to the roof, exterior walls of the Building or to any other buildings in the Project. The Premises, the Building, the Common Areas, the land upon which they are located, along with all other buildings and improvements thereon, are herein collectively referred to as the "**Project**." (See also Paragraph 2)

    1.2(b) **Parking:** ___11___ unreserved vehicle parking spaces. (See also Paragraph 2.6)

    1.3 **Term:** ___three (3)___ years and ___two (2)___ months ("**Original Term**") commencing ___January 1, 2025___ ("**Commencement Date**") and ending ___February 29, 2028___ ("**Expiration Date**"). (See also Paragraph 3)

    1.4 **Early Possession:** If the Premises are available Lessee may have non-exclusive possession of the Premises commencing ___see paragraph 51 in the Addendum___ ("**Early Possession Date**"). (See also Paragraphs 3.2 and 3.3)

    1.5 **Base Rent:** $_____ per month ("**Base Rent**"), payable on the ___first (1st)___ day of each month commencing ___January 1, 2025___ . (See also Paragraph 4)

    ☑ If this box is checked, there are provisions in this Lease for the Base Rent to be adjusted. See Paragraph ___50 in the Addendum___ .

    1.6 **Lessee's Share of Common Area Operating Expenses:** ___seven point two-eight___ percent ( ___7.28___ %) ("**Lessee's Share**"). In the event that the size of the Premises and/or the Project are modified during the term of this Lease, Lessor shall recalculate Lessee's Share to reflect such modification.

    1.7 **Base Rent and Other Monies Paid Upon Execution:**
    (a) **Base Rent:** ▨▨▨▨▨ for the period ___Jan 1, 2025 thru Jan 31, 2025___ .
    (b) **Common Area Operating Expenses:** The current estimate for the period ___n/a___ is ___n/a___ .
    (c) **Security Deposit:** ▨▨▨▨▨ ("**Security Deposit**"). (See also Paragraph 5)
    (d) **Other:** ___n/a___ for ___n/a___ .
    (e) **Total Due Upon Execution of this Lease:** ▨▨▨▨▨

    1.8 **Agreed Use:** ___Building and storage of exhibit displays___ . (See also Paragraph 6)

    1.9 **Insuring Party.** Lessor is the "**Insuring Party**". (See also Paragraph 8)

    1.10 **Real Estate Brokers.** (See also Paragraph 15 and 25)
    (a) **Representation.** The following real estate broker(s) ("**Broker(s)**") and brokerage relationships exist in this transaction (check the applicable boxes):
    ☑ ___Gatski Commercial Mel Koich & Craig Summers___ represents Lessor exclusively ("**Lessor's Broker**");
    ☐ _____ represents Lessee exclusively ("**Lessee's Broker**"); or
    ☐ _____ represents both Lessor and Lessee ("**Dual Agency**").

    (b) **Payment to Brokers.** Upon execution and delivery of this Lease by both Parties, Lessor shall pay to the Brokers the brokerage fee agreed to in a separate written agreement (or if there is no such agreement, the sum of ___n/a___ or ___n/a___ % of the total Base Rent) for the brokerage services rendered by the Brokers.

    1.11 **Guarantor.** The obligations of the Lessee under this Lease are to be guaranteed by ___Keith Alessi and Timothy Thurtle___ ("**Guarantor**"). (See also Paragraph 37)

    1.12 **Attachments.** Attached hereto are the following, all of which constitute a part of this Lease:
    ☑ an Addendum consisting of Paragraphs ___50___ through ___54___ ;
    ☐ a site plan depicting the Premises;
    ☐ a site plan depicting the Project;
    ☐ a current set of the Rules and Regulations for the Project;
    ☐ a current set of the Rules and Regulations adopted by the owners' association;
    ☐ a Work Letter;
    ☑ other (specify): ___Rules and Regulations No's 1&2, Guaranty of Lease___ .

© 2020 AIR CRE. All Rights Reserved.

INITIALS

INITIALS

Last Edited: 11/8/2024 10:02 AM

agents and invitees and their property from the acts of third parties.

**41. Reservations.** Lessor reserves the right: (i) to grant, without the consent or joinder of Lessee, such easements, rights and dedications that Lessor deems necessary; (ii) to cause the recordation of parcel maps and restrictions; and (iii) to create and/or install new utility raceways, so long as such easements, rights, dedications, maps, restrictions, and utility raceways do not unreasonably interfere with the use of the Premises by Lessee. Lessee agrees to sign any documents reasonably requested by Lessor to effectuate such rights.

**42. Performance Under Protest.** If at any time a dispute shall arise as to any amount or sum of money to be paid by one Party to the other under the provisions hereof, the Party against whom the obligation to pay the money is asserted shall have the right to make payment "under protest" and such payment shall not be regarded as a voluntary payment and there shall survive the right on the part of said Party to institute suit for recovery of such sum. If it shall be adjudged that there was no legal obligation on the part of said Party to pay such sum or any part thereof, said Party shall be entitled to recover such sum or so much thereof as it was not legally required to pay. A Party who does not initiate suit for the recovery of sums paid "under protest" within 6 months shall be deemed to have waived its right to protest such payment.

**43. Authority; Multiple Parties; Execution.**

(a)    If either Party hereto is a corporation, trust, limited liability company, partnership, or similar entity, each individual executing this Lease on behalf of such entity represents and warrants that he or she is duly authorized to execute and deliver this Lease on its behalf. Each Party shall, within 30 days after request, deliver to the other Party satisfactory evidence of such authority.

(b)    If this Lease is executed by more than one person or entity as "Lessee", each such person or entity shall be jointly and severally liable hereunder. It is agreed that any one of the named Lessees shall be empowered to execute any amendment to this Lease, or other document ancillary thereto and bind all of the named Lessees, and Lessor may rely on the same as if all of the named Lessees had executed such document.

(c)    This Lease may be executed by the Parties in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

**44. Conflict.** Any conflict between the printed provisions of this Lease and the typewritten or handwritten provisions shall be controlled by the typewritten or handwritten provisions.

**45. Offer.** Preparation of this Lease by either party or their agent and submission of same to the other Party shall not be deemed an offer to lease to the other Party. This Lease is not intended to be binding until executed and delivered by all Parties hereto.

**46. Amendments.** This Lease may be modified only in writing, signed by the Parties in interest at the time of the modification. As long as they do not materially change Lessee's obligations hereunder, Lessee agrees to make such reasonable non-monetary modifications to this Lease as may be reasonably required by a Lender in connection with the obtaining of normal financing or refinancing of the Premises.

**47. Waiver of Jury Trial. THE PARTIES HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING INVOLVING THE PROPERTY OR ARISING OUT OF THIS LEASE.**

**48. Arbitration of Disputes.** An Addendum requiring the Arbitration of al disputes between the Parties and/or Brokers arising out of this Lease ☐ is ☑ is not attached to this Lease.

**49. Accessibility; Americans with Disabilities Act.** Since compliance with the Americans with Disabilities Act (ADA) and other state and local accessibility statutes are dependent upon Lessee's specific use of the Premises, Lessor makes no warranty or representation as to whether or not the Premises comply with ADA or any similar legislation. In the event that Lessee's use of the Premises requires modifications or additions to the Premises in order to be in compliance with ADA or any accessibility statutes, Lessee agrees to make any such necessary modifications and/or additions at Lessee's expense.

**LESSOR AND LESSEE HAVE CAREFULLY READ AND REVIEWED THIS LEASE AND EACH TERM AND PROVISION CONTAINED HEREIN, AND BY THE EXECUTION OF THIS LEASE SHOW THEIR INFORMED AND VOLUNTARY CONSENT THERETO. THE PARTIES HEREBY AGREE THAT, AT THE TIME THIS LEASE IS EXECUTED, THE TERMS OF THIS LEASE ARE COMMERCIALLY REASONABLE AND EFFECTUATE THE INTENT AND PURPOSE OF LESSOR AND LESSEE WITH RESPECT TO THE PREMISES.**

**ATTENTION: NO REPRESENTATION OR RECOMMENDATION IS MADE BY AIR CRE OR BY ANY BROKER AS TO THE LEGAL SUFFICIENCY, LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS LEASE OR THE TRANSACTION TO WHICH IT RELATES. THE PARTIES ARE URGED TO:**
**1.    SEEK ADVICE OF COUNSEL AS TO THE LEGAL AND TAX CONSEQUENCES OF THIS LEASE.**
**2.    RETAIN APPROPRIATE CONSULTANTS TO REVIEW AND INVESTIGATE THE CONDITION OF THE PREMISES. SAID INVESTIGATION SHOULD INCLUDE BUT NOT BE LIMITED TO: THE POSSIBLE PRESENCE OF HAZARDOUS SUBSTANCES, THE ZONING OF THE PREMISES, THE STRUCTURAL INTEGRITY, THE CONDITION OF THE ROOF AND OPERATING SYSTEMS, COMPLIANCE WITH THE AMERICANS WITH DISABILITIES ACT AND THE SUITABILITY OF THE PREMISES FOR LESSEE'S INTENDED USE.**

**WARNING: IF THE PREMISES ARE LOCATED IN A STATE OTHER THAN NEVADA, CERTAIN PROVISIONS OF THE LEASE MAY NEED TO BE REVISED TO COMPLY WITH THE LAWS OF THE STATE IN WHICH THE PREMISES ARE LOCATED.**

The parties hereto have executed this Lease at the place and on the dates specified above their respective signatures.

| | |
|---|---|
| Executed at: _____ | Executed at: _____ |
| On: _____ | On: _____ |
| **By LESSOR:** | **By LESSEE:** |
| Venture Point LLC, a Nevada Limited Liability Company | TCB Productions LLC, a Nevada Limited Liability Company |
| By: *Albert Bushala*   11/15/2024 \| 10:14 AM PST | By: *Keith Alessi*   11/15/2024 \| 9:08 AM |
| Name Printed: Albert Bushala | Name Printed: Keith Alessi |
| _____ *AB* | _____ *tA* |
| INITIALS | INITIALS |

© 2020 AIR CRE. All Rights Reserved.

Last Edited: 11/8/2024 10:02 AM

Title: __Manager__

Phone: __████████████__

Fax: _____

Email: __abushala@sbcglobal.net__

By: _____

Name Printed: _____

Title: _____

Phone: _____

Fax: _____

Email: _____

Address: __110 E. Walnut Ave.,__
__Fullerton CA 92832__

Federal ID No.: _____

Title: __Manager__

Phone: __████████████__

Fax: _____

Email: __PAPlasticsLV@gmail.com__

By: _Timothy Thurtle_      **11/15/2024 | 9:46 AM PS**

Name Printed: __Timothy Thurtle__

Title: _____

Phone: _____

Fax: _____

Email: __timtblu16702@gmail.com__

Address: __10085 Gila River St.__
__Las Vegas NV., 89178__

Federal ID No.: _____

**BROKER**

__Gakski Commercial Real Estate Services__

Attn: __Craig Summers & Mel Koich__

Title: __Vice President, Sr Vice President__

Address: __4755 Dean Martin Dr__
__Las Vegas, NV., 89103__

Phone: __████████████__

Fax: _____

Email: _____

Federal ID No.: _____

Broker License #: _____

Agent License #: _____

**BROKER**

_____

Attn: _____

Title: _____

Address: _____

Phone: _____

Fax: _____

Email: _____

Federal ID No.: _____

Broker License #: _____

Agent License #: _____

**AIR CRE  *  https://www.aircre.com  *  213-687-8777  *  contracts@aircre.com**
**NOTICE:  No part of these works may be reproduced in any form without permission in writing.**

_____ DS
_____ AB

INITIALS



INITIALS

© 2020 AIR CRE.  All Rights Reserved.

Last Edited: 11/8/2024 10:02 AM



**NEVADA**

# GUARANTY OF LEASE

WHEREAS,  Venture Point LLC, a Nevada Limited Liability Company , hereinafter "Lessor", and  TCB Productions LLC, a Nevada Limited Liability Company , hereinafter "Lessee", are about to execute a document entitled "Lease" dated  11/8/24  concerning the premises commonly known as (street address, city, state, zip)  6250 E. Tropical Pkwy., North Las Vegas NV., 89115  wherein Lessor will lease the premises to Lessee, and

WHEREAS,  Keith Alessi and Timothy Thurtle  hereinafter "Guarantors" have a financial interest in Lessee, and

WHEREAS, Lessor would not execute the Lease if Guarantors did not execute and deliver to Lessor this Guaranty of Lease.

NOW THEREFORE, in consideration of the execution of said Lease by Lessor and as a material inducement to Lessor to execute said Lease, Guarantors hereby jointly, severally, unconditionally and irrevocably guarantee the prompt payment by Lessee of all rents and all other sums payable by Lessee under said Lease and the faithful and prompt performance by Lessee of each and every one of the terms, conditions and covenants of said Lease to be kept and performed by Lessee.

It is specifically agreed by Lessor and Guarantors that: (i) the terms of the foregoing Lease may be modified by agreement between Lessor and Lessee, or by a course of conduct, and (ii) said Lease may be assigned by Lessor or any assignee of Lessor without the consent or notice to Guarantors and that this Guaranty shall guarantee the performance of said Lease as so modified.

This Guaranty shall not be released, modified or affected by the failure or delay on the part of Lessor to enforce any of the rights or remedies of the Lessor under said Lease.

No notice of default by Lessee under the Lease need be given by Lessor to Guarantors, it being specifically agreed that the guarantee of the undersigned is a continuing guarantee under which Lessor may proceed immediately against Lessee and/or against Guarantors following any breach or default by Lessee or for the enforcement of any rights which Lessor may have as against Lessee under the terms of the Lease or at law or in equity.

Lessor shall have the right to proceed against Guarantors following any breach or default by Lessee under the Lease without first proceeding against Lessee and without previous notice to or demand upon either Lessee or Guarantors.

Guarantors hereby waive (a) notice of acceptance of this Guaranty. (b) demand of payment, presentation and protest, (c) all right to assert or plead any statute of limitations relating to this Guaranty or the Lease, (d) any right to require the Lessor to proceed against the Lessee or any other Guarantor or any other person or entity liable to Lessor, (e) any right to require Lessor to apply to any default any security deposit or other security it may hold under the Lease, (f) any right to require Lessor to proceed under any other remedy Lessor may have before proceeding against Guarantors, (g) any right of subrogation that Guarantors may have against Lessee.

Guarantors do hereby subordinate all existing or future indebtedness of Lessee to Guarantors to the obligations owed to Lessor under the Lease and this Guaranty.

If a Guarantor is married, such Guarantor expressly agrees that recourse may be had against his or her separate property and share of community property for all of the obligations hereunder.

The obligations of Lessee under the Lease to execute and deliver estoppel statements and financial statements, as therein provided, shall be deemed to also require the Guarantors to provide estoppel statements and financial statements to Lessor.  The failure of the Guarantors to provide the same to Lessor shall constitute a default under the Lease.

The term "Lessor" refers to and means the Lessor named in the Lease and also Lessor's successors and assigns.  So long as Lessor's interest in the Lease, the leased premises or the rents, issues and profits therefrom, are subject to any mortgage or deed of trust or assignment for security, no acquisition by Guarantors of the Lessor's interest shall affect the continuing obligation of Guarantors under this Guaranty which shall nevertheless continue in full force and effect for the benefit of the mortgagee, beneficiary, trustee or assignee under such mortgage, deed of trust or assignment and their successors and assigns.

The term "Lessee" refers to and means the Lessee named in the Lease and also Lessee's successors and assigns.

Any recovery by Lessor from any other guarantor or insurer shall first be credited to the portion of Lessee's indebtedness to Lessor which exceeds the maximum liability of Guarantors under this Guaranty.

No provision of this Guaranty or right of the Lessor can be waived, nor can the Guarantors be released from their obligations except in writing signed by the Lessor.

Any litigation concerning this Guaranty shall be initiated in a state court of competent jurisdiction in the county in which the leased premises are located and the Guarantors consent to the jurisdiction of such court.  This Guaranty shall be governed by the laws of the State in which the leased premises are located and for the purposes of any rules regarding conflicts of law the parties shall be treated as if they were all residents or domiciles of such State.

In the event any action be brought by said Lessor against Guarantors hereunder to enforce the obligation of Guarantors hereunder, the unsuccessful party in such action shall pay to the prevailing party therein a reasonable attorney's fee.  The attorney's fee award shall not be computed in accordance with any court fee schedule, but shall be such as to full reimburse all attorneys' fees reasonably incurred.

If any Guarantor is a corporation, partnership, or limited liability company, each individual executing this Guaranty on said entity's behalf represents and warrants that he or she is duly authorized to execute this Guaranty on behalf of such entity.  Signatures to this Guaranty accomplished by means of electronic



INITIALS                                    INITIALS

© 2020 AIR CRE.  All Rights Reserved.                    Last Edited: 11/8/2024 10:02 AM

signature or similar technology shall be legal and binding.

**If this Form has been filled in, it has been prepared for submission to your attorney for his or her approval.  No representation or recommendation is made by AIR CRE, the real estate broker or its agents or employees as to the legal sufficiency, legal effect, or tax consequences of this Form or the transaction relating thereto.**

GUARANTORS                                                              Executed At: _____
_Keith Alessi and Timothy Thurtle_                                     On: _____

By: _keith Alessi_    11/15/2024 | 9:08 AM PST          By: _Timothy Thurtle_    11/15/2024 | 9:46 AM PST
Name Printed: _Keith Alessi_                            Name Printed: _Timothy Thurtle_
Title: _____                                      Title: _____
Address: _____                                    Address: _____

**AIR CRE  *  https://www.aircre.com  *  213-687-8777  *  contracts@aircre.com**
**NOTICE:  No part of these works may be reproduced in any form without permission in writing.**



INITIALS                              INITIALS

© 2020 AIR CRE.  All Rights Reserved.          Last Edited: 11/8/2024 10:02 AM
GRNV-1.00, Revised 10-22-2020                                                        Page 2 of 2