SIGAL CHATTAH
United States Attorney
Nevada Bar Number 8264
LAUREN M. IBANEZ
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Tel: 702.388.6336
Fax: 702.388-6418
Lauren.Ibanez@usdoj.gov
*Attorneys for the United States*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TIMOTHY THURTLE,<br><br>Defendant. | Case No. 2:24-cr-00229-APG-NJK<br><br>**Government's Response to Defendant's Motion to Dismiss (ECF 34)** |

The United States of America, by and through Sigal Chattah, United States Attorney, and Lauren M. Ibanez, Assistant United States Attorney, submits this Response to defendant's Motion to Dismiss. This Response is timely filed.

I. **Introduction**

On May 12, 2025, Defendant Timothy Turtle filed a Motion to Dismiss the Indictment in the instant matter. In support of his motion, Thurtle asserts multiple theories including alleged good faith reliance, entrapment by estoppel, vagueness of 18 U.S.C. §922(g)(1) as applied, and government error in background check processes. Each argument lacks merit and is contradicted by the facts—most notably, that Thurtle has two prior felony convictions and made false statements on both his Concealed Carry Weapons

(CCW) permit application and ATF form 4473. His motion should be denied in its entirety.

II. **Statement of Facts and Procedural History**

On or about April 10, 2024, the Las Vegas Metropolitan Police Department ("LVMPD") responded to a 911 call for an alleged road rage incident that occurred in the Las Vegas area. The caller alleged that, while driving on the highway, a motorcyclist was following him and was waiving a firearm in his direction. LVMPD responded to the 911 call and conducted a traffic stop on the motorcyclist, who was later identified as Timothy Thurtle. During the stop, officers recovered a loaded Springfield Armory Hellcat, 9mm pistol bearing serial number BY257031 in a concealed holster strapped to Thurtle's torso. LVMPD also recovered two additional magazines on his person.

LVMPD conducted a record's check on Thurtle and discovered that he had a concealed carry permit from Nevada issued on or about December 5, 2019. He also had two prior felony convictions for *Theft* in 2004 and *Assault with a Deadly Weapon* in 2007, both in Clark County, Nevada. Investigators subsequently discovered that Thurtle had applied for a concealed firearm permit from LVMPD on August 27, 2019. *See* Gov't Ex. A. Notably, question number 9 on the application asks "[h]ave you ever been convicted of a felony in this or any other state?" to which Thurtle responded "no." *Id*. Investigators also discovered that Thurtle again falsely claimed he did not have any prior felony convictions when he purchased the firearm in question, the Hellcat Springfield Armory, from Northwest Arms in Las Vegas, a federally licensed firearm dealer. Specifically, on or about July 15, 2020, Thurtle completed an ATF form 4473—a Firearms Transaction Record—when he purchased the firearm from Northwest Arms. *See* Gov't Ex. B. Notably, again, question

2

number 11(c) asks "[h]ave you ever been convicted in any court of a felony, or any other crime for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence including probation?" to which Thurtle responded "no." *Id.*

On October 8, 2024, a federal grand jury sitting in Las Vegas, Nevada returned a one-count indictment against Defendant Timothy Thurtle for Possession of a Firearm by a Prohibited Person in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). *See* ECF No. 1.

On November 12, 2024, Defendant had his arraignment and initial appearance to which he pled not guilty. *See* ECF No. 5. Defendant was also ordered released pending trial. *Id.*

On November 22, 2024, Defendant filed a motion to modify his conditions of pre-trial release which was granted on November 26, 2024. *See* ECF Nos. 12-14.

On or about April 28, 2025, and again on May 12, 2025, Pre-trial services filed a memorandum recommending that the Defendant's pre-trial release should be revoked and a revocation of pre-trial release hearing was held on May 12, 2025. *See* ECF No. 35. It was ordered that Defendant's pre-trial release be revoked and he was detained pending trial. *Id.*

On May 12, 2025, Defendant filed a Motion to Dismiss the Indictment. *See* ECF No. 36.

**III.   Argument**

An indictment must be upheld if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend." *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007); *United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009). Rule 12(b)(1) permits a motion to dismiss based on legal issues apparent from the face of the indictment. "A motion to dismiss the

3

indictment cannot be used as a device for a summary trial of the evidence." *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996) (*citing United States v. Mann*, 517 F.2d 259, 267 (5th Cir. 1975), *cert. denied* 423 U.S. 1087 (1976)). Thurtle argues that his prosecution under 18 U.S.C. § 922(g)(1) is barred by the doctrine of entrapment by estoppel, claiming he reasonably relied on government authority—specifically, the issuance of a Nevada concealed carry weapons (CCW) permit—as authorization that he could lawfully possess a firearm. This argument fails both as a matter of fact and law.

### A. Thurtle did not act in good faith or in reasonable reliance—and even if he did, the conduct was still criminal.

Federal courts have consistently held that the issuance of a state firearms license does not negate the federal prohibition under § 922(g)(1). *See United States v. Hancock*, 231 F.3d 557, 562 (9th Cir. 2000) (rejecting the argument that state's issuance of a firearm estops federal prosecution under § 922(g)); *see also United States v. Napier*, 233 F. 3d 394, 400 (6th Cir. 2000). In *Hancock*, the defendant bought firearms and was subsequently convicted of misdemeanor domestic violence offenses. *Hancock*, 231 F.3d at 557. Despite the law changing and his legal status changing years after purchasing the firearms, the Court held the government cannot be estopped from prosecution because the defendant was correctly informed of the law at the time of purchase. *Id*. at 568. Here, Thurtle's reliance on his state-issued concealed carry permit is legally irrelevant. Similar to *Hancock*, Thurtle is a prohibited person who "had at least some reason to know that his behavior might, in the future, be subject to additional regulation relating to such weapons." *Id.* at 564-65. The existence of a permit—especially one procured by deception—does not

4

render Thurtle's firearm possession lawful under federal law. He is attempting to evade liability based on improper reliance claims.

Thurtle's own actions foreclose any claim of good faith or reasonable reliance. First, he knowingly lied on his Nevada CCW permit application. *See* Gov't Ex. A. He falsely certified that he had no prior felony convictions when, in fact, he had two prior felonies punishable by more in than one year in the State of Nevada: *Theft*, on or about March 22, 2004 in Clark County, Nevada under case number C178292; and *Assault with a Deadly Weapon*, on or about June 5, 2007, in Clark County, Nevada under case number C230919. *See* Gov't Exs. C and D; *see also infra* section C. Second, he also lied on the ATF Form 4473 when he purchased the firearm in question. *See* Gov't Ex. B**.** This form also explicitly asks whether the purchaser has been convicted of felony, to which he answered no. Again, concealing his disqualifying criminal history.

These actions show that Thurtle did not act in good faith or that he genuinely believed he was permitted to purchase a firearm. Rather, he attempted to circumvent both state and federal prohibitions by concealing his criminal record and presenting himself falsely as a lawful gun owner. To this extent, Defendant cannot claim good-faith reliance as he intentionally provided false information. *See United States v. Brebner*, 951 F.2d, 1017 (9th Cir. 1991) (holding that the evidence was insufficient to support an entrapment by estoppel defense and that the evidence was sufficient to support conviction for making false statements in acquisition of firearms). Similar to the instant case, in *Brebner*, the defendant mispresented his prohibited person status when he denied the existence of his prior convictions on a Bureau of Alcohol,

Tabacco and Firearms ("BAFT") form when purchasing firearms from a federally licensed firearms dealer. *Id.* "There was no contention that Brebner was unaware of his prior convictions … On the contrary, the form's clearly worded instruction requiring a "yes" … even if his prior convictions had been dismissed, supports the conclusion that Brebner knew his negative answers must have been false." *Id.* at 1028. Thus, even if Thurtle believed he was "cleared" by state officials when he was issued the permit, he still had actual knowledge of his prior felony convictions and is prohibited from possessing a firearm.

**B. Thurtle cannot establish the required elements of entrapment by estoppel.**

Even assuming arguendo that Thurtle relied on the concealed carry permit, his entrapment by estoppel defense still fails because he cannot establish the required elements. Entrapment by estoppel is a narrow defense that applies when a government agent's conduct leads the defendant to believe that certain conduct is legal, and the defendant, relying on that belief, commits an otherwise illegal act. *See United States v. Ramierez-Valencia*, 202, F.3d 1106, 1109 (9th Cir. 2000). It derives from the Due Process Clause of the Constitution, which prohibits convictions based on misleading actions by government officials. *United Staes v. Tallmadge*, 829 F.2d 767, 773 (9th Cir. 1987) (citing and discussing *Cox v. Louisiana,* 379 U.S. 559 (1965), and *Raley v. Ohio,* 360 U.S. 423 (1959)). Entrapment by estoppel requires Thurtle to establish *all* of the following:

1. An affirmative misrepresentation by a government official;
2. The official was authorized to render the legal advice at issue;
3. The defendant actually and reasonably relied on the misrepresentation; and
4. That reliance led to the commission of the criminal act.

6

*See United States v. Batterjee*, 361 F.3d 1210, 1216-17 (9th Cir. 2004); *see also Ramirez–Valencia,* 202 F.3d at 1109.

This affirmative defense is the defendant's burden to prove. *See Ramirez–Valencia,* 202 F.3d at 1109. Specifically, the defendant "must do more than show that the government made 'vague or even contradictory statements.'" *Id*. (citing *Raley v. Ohio,* 360 U.S. 423 (1959)). "Rather, he must show that the government affirmatively told him the proscribed conduct was permissible, and that he reasonably relied on the government's statement." *Id.* "A defendant's reliance is reasonable if 'a person sincerely desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further inquiries.'" *Id*. (quoting *United States v. Lansing*, 424 F.2d 225, 227 (9th Cir. 1970)).

In his motion, Thurtle argues that he has satisfied his burden simply because LVMPD and the firearm license dealer conducted background checks, issued him a permit, and sold him a firearm. However, Thurtle fails to provide any evidence whatsoever that any state or federal official affirmatively told Thurtle he could legally possess a firearm. Similar to *Brebner,* and unlike *Tallmadge*, there is no evidence of any type of "affirmative misleading on the part of these dealers that is required to justify an entrapment by estoppel defense." *See Brebner*, 951 F.2d at 1026. Thurtle does not provide any evidence suggesting that a government official advised him that he could legally possess a firearm despite his two prior felony convictions. Reliance on the issuance of a concealed carry permit—especially one procured through false statements—does not meet the threshold of a clear, affirmative representation required for estoppel.

In *Tallmadge*, the firearms dealer initially noted the defendant may have a problem purchasing the firearm due to his felony conviction but later agreed that there was no problem because his felony conviction was reduced to a misdemeanor. 829 F.2d at 770; *see also Brebner*, 951 F.2d at 1025-26. Thus, because the defendant relied on both the misleading representations of the licensed firearms dealer and sought advice from an experienced criminal lawyer, he was misled under the doctrine of estoppel. *Tallmadge*, 829 F.2d at 775. *Brebner* was a "sharp contrast to the type of evidence [sic] held sufficient to justify an entrapment by estoppel defense." 951 F.2d at 1026. "Brebner has failed to show the type of affirmative misleading on the part of these dealers that is required to justify an entrapment by estoppel defense." *Id*.; (citing *Lavin v. Marsh,* 644 F.2d 1378, 1382 (9th Cir.1981)) ("[T]o invoke estoppel against the Government, the party claiming estoppel must show 'affirmative misconduct' as opposed to mere failure to inform or assist.") (citation omitted); *Santiago v. INS,* 526 F.2d 488, 491 (9th Cir.1975) (enbanc) ("[T]he rule of estoppel ... can only be invoked if the governmental conduct complained of amounts to 'affirmative misconduct'....") (citation omitted), *cert. denied,* 425 U.S. 971 (1976).

Here, Thurtle failed to show any affirmative misconduct on behalf of a government official. Rather, Thurtle's own misstatements on official forms, both at the state and federal level, demonstrate his own misconduct and defeat any claim of reasonable reliance. A person who lies to obtain permission cannot later claim to have relied on that permission. Lastly, Thurtle did not possess the firearm *because* of an official assurance. He possessed the firearm because he intentionally circumvented the law. The fact that he lied on both the CCW permit application, and

the ATF Form 4473 makes it impossible to credit the claim that he was misled by a government actor. The core concern of the doctrine is preventing "affirmative misleading" by the government, not shielding defendants from the consequences of their own misrepresentations. *See Ramirez–Valencia,* 202 F.3d at 1110. Because Thurtle cannot meet even one, let alone all, of the required elements, the estoppel defense fails as a matter of law.

**C. Section 922(g) is not vague and applies to Thurtle.**

The statue is not vague, and Thurtle's own conduct, including his prior convictions, guilty pleas, and repeated misrepresentations, establish the requisite *mens rea* under *Rehaif.* An "as-applied" vagueness challenge requires a showing that the statue failed "to provide a person of ordinary intelligence fair notice" that his conduct was unlawful. *See United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013). Here, Thurtle had two prior felony convictions both resulting from guilty pleas—meaning he was present in court when he entered his plea. His *Theft* conviction carried a custodial sentence of 12 to 48 months, and his *Assault with a Deadly Weapon* conviction carried a custodial sentence of 24 to 60 months. *See* Gov't Exs. C and D. Both crimes are punishable by imprisonment for more than one year under federal law. *See* 18 U.S.C. § 922(g)(1). Thurtle's criminal history places him squarely within the prohibited category. There is no ambiguity in how the statute applies to him, and any claim that he lacked notice of his status strains credulity in light of his own criminal history and conduct. Erroneously receiving his CCW permit did not "clear" him of prohibited status. It merely exempted him from a second background check when he purchased the firearm from a federal firearm licensee (FFL). *See* 27 C.F.R. § 478.102(d) (This section provides for exceptions to the required background check via the National Instant Criminal Background

Check System (NCIS). One of the noted exceptions is a valid permit of license—such as the Nevada Conceal Carry Weapons Permit.) Such an exemption does not reflect a substantive finding that a person is not a prohibited possessor.

### D. Government oversight or a failed process does not legalize otherwise criminal conduct.

Thurtle contends that because he purchased a firearm from a federally licensed firearm dealer, he believed that he could legally possess a firearm. He attributes this belief to what he describes as a failure of the "government's own mechanism" to flag his felony convictions. Even if that were true and some background check process failed, the legal consequence remains unchanged: Thurtle still knowingly possessed a firearm as a convicted felon, which remains a federal crime under 18 U.S.C. § 922(g)(1). Government oversight or error does not legalize otherwise criminal conduct. A convicted felon remains a prohibited person under § 922(g) regardless of whether State officials mistakenly permitted him to carry a firearm. *See generally Hancock*, 231 F.3d 557. Here, Thurtle himself caused or at least contributed to any administrative failure. He lied on both the CCW application and the ATF form 4473, and these lies should not be used as a shield from prosecution.

### E. Thurtle's motion to dismiss the indictment is premature and improper.

Notwithstanding the above arguments, Thurtle's motion is premature and improper. A motion to dismiss the indictment is not the forum to contest the sufficiency of the government's evidence or raise factual defenses pre-trial. "A motion to dismiss is not a device for a summary trial of the evidence … The court should not consider evidence not appearing on the face of the indictment." *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996) (citing *United States v. Marra*, 481 F.2d 1196, 1199-1200 (6th Cir.) *cert. denied*, 414 U.S.

1004 (1973)). Further, a motion to dismiss the indictment cannot be used as a vehicle to determine the sufficiency of the government's evidence before trial. *See United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993). Thus, any factual disputes such as whether Thurtle knew of his prohibited status or reasonably relied on a permit are questions for the jury to resolve, and not in a pretrial motion to dismiss the indictment.

### IV. Conclusion

For the reasons stated above, Defendant's motion to dismiss should be denied.

**DATED** this 27th day of May 2025.

SIGAL CHATTAH
United States Attorney

*/s/ Lauren M. Ibanez*
_____
LAUREN M. IBANEZ
Assistant United States Attorney

<u>Government's Exhibit Index</u>

Exhibit A …………..Thurtle's Application for a Nevada Concealed Carry Permit

Exhibit B ………….. Thurtle's Firearm Transaction Record, ATF Form 4473

Exhibit C ………….. Thurtle's 2004 Judgment of Conviction for *Theft*

Exhibit D …………. Thurtle's 2007 Judgment of Conviction for *Assault with a Deadly Weapon*