**RPLY**
ERICK M. FERRAN, ESQ**.**
Nevada State Bar No. 9554
HITZKE & FERRAN LLP.
2110 East Flamingo Road, Suite 206
Las Vegas, Nevada 89119
*Telephone No.: (702) 476-9668*
*Facsimile No.: (702) 462-2646*
*erick.ferran@hitzkelaw.com*
*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | **CASE NO.: 2:24-cr-00229-APG-NJK** |
| Plaintiff, | **REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |
| vs. | |
| TIMOTHY THURTLE, | |
| Defendant. | |

CERTIFICATION: This Reply was timely filed pursuant to LCR 12-1(a)(3).

COMES NOW the Defendant, TIMOTHY THURTLE, by and through his counsel of record, ERICK M. FERRAN, ESQ., from the law office of HITZKE & FERRAN LLP., and files this instant Reply in Support of Defendant's Motion to Dismiss.

This Reply is made and based upon all the papers and pleadings on file herein, the Memorandum of Points and Authorities, and any additional oral argument taken at the time set hearing this Motion.

DATED this 3RD day of June 2025.

**HITZKE & FERRAN LLP.**

/s/ Erick M. Ferran, Esq.
ERICK M. FERRAN, ESQ**.**
Nevada State Bar No. 9554
2110 East Flamingo Road, Suite 206
Las Vegas, Nevada 89119
*Telephone No.: (702) 476-9668*
*Facsimile No.: (702) 462-2646*
*erick.ferran@hitzkelaw.com*
*Attorneys for Defendant*

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    Introduction

The Government in their Response, now alleges that Thurtle made a false statement on the Concealed Carry Weapon (hereinafter "CCW") application and/or Bureau of Alcohol, Tobacco, and Firearms (hereinafter "BATF") Form 4473. While indeed Thurtle in said documents presented that he had not been convicted of a felony, the Government has failed to further identify any additional incorrect and/or misleading information that would otherwise indicate Thurtle's intent to deceive or obtain a CCW and/or firearm through deception. Thurtle *is not* charged in the Indictment with providing false information, and therefore, the Government's response is without merit, and the Indictment must be dismissed.

Even assuming arguendo that an inadvertent misstatement was made, it is a well-established principle that the burden to thoroughly investigate and confirm eligibility lies with the issuing agency and the Government itself. This is especially true when the applicant provides all required personally identifying information, enabling the authorities to conduct a full background check. Ultimately, the legal and constitutional burden to conduct a complete and thorough background check rests with the issuing agencies — namely, the Las Vegas Metropolitan Police Department (hereinafter "LVMPD") and the federal Government through the National Instant Criminal Background Check System (hereinafter "NICS"). As the Defendant provided full, correct identifying information, including his legal name, date of birth, and social security number, any oversight or issuance error was attributable to administrative failure, not criminal intent.

## II.    ARGUMENT

### A.    Elements of the Offense Charged

The Government in their Response claims that Thurtle's argument "fails both as a matter of fact and law".[1] While the Supreme Court held that an indictment for attempted illegal reentry under 8 U.S.C. § 1326(a) need not explicitly allege a specific overt act because the term "attempt"

---

[1] *Id. at 4; 7-8*

encompasses both intent and a substantial step toward the offense, Justice Scalia, in his Dissenting

Opinion asserted that:

> "The majority's approach allows prosecutors to omit from the indictment a description of the defendant's conduct, which violates the Fifth Amendment requirement that a grand jury find probable cause for each element of the offense."[2]

Justice Scalia's dissent emphasized that indictments must be sufficiently specific to protect defendants' rights under the Fifth and Sixth Amendments. He warned that the ruling sets a precedent allowing vague charges, risking unjust prosecutions. Furthermore, prior to *Resendiz-Ponce*, the Ninth Circuit held that:

> "An indictment charging attempt must allege both intent and a substantial step toward completion of the offense, with specificity."[3]

This case was effectively overruled by *Resendiz-Ponce*, which accepted more general indictment language as sufficient. The Ninth Circuit ruled that an indictment need not separately allege specific intent where the crime charged involves an "attempt," as the word "attempt" inherently implies intent.

Prior to *Resendiz-Ponce* and *Pernillo-Fuentes*, the Ninth Circuit stated:

> "When a crime includes the element of specific intent, the indictment must allege facts supporting that intent with particularity."[4]

*Morrison* illustrates a stricter view of indictment sufficiency—one that demands explicit articulation of mental state, not mere reliance on legal terminology. Some courts have gone as far as expressing skepticism of the broad leeway permitted under *Awad*:

> "The indictment must allege every essential element explicitly. Courts cannot presume elements not found in the charging document."[5]

Both *Resendiz-Ponce* and *Awad* represent a trend toward leniency in indictment drafting by presuming that certain elements (like specific intent or a substantial step) are implied by legal

---

[2] *See Resendiz-Ponce*, 549 U.S. at 112–14 (Scalia, J., dissenting)
[3] *United States v. Pernillo-Fuentes*, 252 F.3d 1030, 1032 (9th Cir. 2001)
[4] *United States v. Morrison*, 536 F.2d 286, 288 (9th Cir. 1976)
[5] *United States v. Yefsky*, 994 F.2d 885, 893 (1st Cir. 1993)

terms such as "attempt." However, dissenting opinions and earlier rulings—particularly in the Ninth Circuit—insist that indictments must allege each element explicitly and factually, or risk violating constitutional due process.

While the Supreme Court's decision in *Resendiz-Ponce* established that an indictment for attempted illegal reentry under 8 U.S.C. § 1326(a) need not allege a specific overt act, some courts have expressed concerns about the implications of this ruling. These concerns often center on the potential erosion of the constitutional requirement that an indictment must clearly state all elements of the offense to inform the defendant of the charges and to protect against double jeopardy.

While *Resendiz-Ponce* is binding precedent, its interpretation and application continue to be subjects of discussion and analysis within the legal community. The concerns raised highlight the importance of balancing the efficiency of legal proceedings with the constitutional rights of defendants to be fully informed of the charges they face.

## B.    FRCP 12(b)(1)

## I.    Legal Basis for Dismissal Where Facts Are Undisputed

While it is true that Rule 12(b) motions to dismiss the indictment generally cannot be used to resolve factual disputes concerning guilt, courts may dismiss an indictment where the facts are undisputed and dispositive as a matter of law, including in affirmative defenses such as entrapment by estoppel.

> "[A] district court may make preliminary findings of fact necessary to decide the legal questions presented by a motion to dismiss, so long as the court does not invade the province of the jury."[6]

The Ninth Circuit has also ruled that:

> "A court may properly dismiss an indictment under Rule 12 where the Government's factual allegations, even if true, fail to state an offense."[7]

Thus, if the defendant's reliance on the CCW permit is undisputed (e.g., proven via official documentation), and the Government concedes the issuance, then the court can consider whether such reliance legally bars prosecution—without impermissibly deciding credibility.

---

[6] *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993)
[7] *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002)

## II.   Entrapment by Estoppel Is a Legal Defense That Can Be Resolved Pretrial

Entrapment by estoppel applies when a government official affirmatively misleads a person into believing their conduct is legal, and the person reasonably relies on that advice.

> "Entrapment by estoppel is available when an authorized Government official tells the defendant that certain conduct is legal, and the defendant reasonably relies on that advice."[8]

Some courts have further opined that:

> "Where the facts underlying the entrapment by estoppel defense are undisputed, courts may consider the defense at the motion-to-dismiss stage."[9]

Therefore, if Thurtle can show he relied on explicit Government authorization (e.g., a state-issued permit), it is appropriate for the court to consider whether this reliance legally precludes prosecution under § 922(g)(1).

## III.   Federal-State Conflict and Apparent Authority

While federal law prohibits felons from possessing firearms, conflicting state authority—such as a CCW permit issued despite a known felony conviction—can give rise to entrapment by estoppel if the issuing agency was acting with apparent federal authority, or the defendant had a reasonable basis to believe so. The Ninth Circuit has ruled that:

> "It is not necessary that the Government agent be specifically authorized to make the statement in question, only that he appear to have the authority."[10]

If the issuing official had access to Thurtle's criminal record and still granted a permit, this reinforces the reasonableness of Thurtle's reliance, potentially satisfying both the factual and legal elements of the defense. Thurtle's motion to dismiss is not a summary trial of evidence—it is a legal challenge grounded in undisputed facts about state-authorized firearm possession and raises a complete affirmative defense recognized by the Ninth Circuit. Courts can and do dismiss indictments when the Government's facts, even if taken as true, fail to establish an offense due to a legally dispositive defense like entrapment by estoppel.

---

[8] *United States v. Batterjee*, 361 F.3d 1210, 1216 (9th Cir. 2004)
[9] *United States v. Valle*, 807 F.3d 508, 515–16 (2d Cir. 2015) (Affirming that an indictment may be dismissed based on undisputed facts establishing a complete affirmative defense)
[10] *United States v. Tallmadge*, 829 F.2d 767, 773 (9th Cir. 1987)

1

2

**C.    An Inadvertent Misstatement Does Not Automatically Constitute a Willful Violation**

3

4

5

6

Under 18 U.S.C. § 922(a)(6), it is unlawful for any person, in connection with the acquisition of a firearm from a licensed dealer, to knowingly make a false oral or written statement that is material to the lawfulness of the sale. The statute imposes criminal liability only when the falsehood is knowing — i.e., made with actual awareness and understanding of its falsity.

7

**I.    An Inadvertent Error or Honest Mistake Falls Outside the Scope of § 922(a)(6)**

8

9

10

11

12

13

14

The Supreme Court found the fundamental principle that criminal statutes — particularly those implicating constitutionally protected conduct such as firearm possession — must include a *mens rea* requirement.[11] In *Staples*, the Court reversed a conviction under the National Firearms Act, holding that where a statute is silent as to *mens rea*, courts should presume the requirement of knowledge to avoid criminalizing innocent conduct. The Court emphasized that under our system of justice, criminal liability generally does not turn solely on the results of a mechanical act.

15

16

17

18

19

20

When applying *Staples* here, if the defendant did not know that his statement on the CCW application or BATF Form 4473 was false — *or, if he misunderstood the legal implications of his criminal record in good faith* — then the knowledge element required by § 922(a)(6) is not satisfied. A mistaken belief, even if ultimately incorrect, cannot form the basis for criminal conviction absent proof beyond a reasonable doubt that the defendant understood the legal significance of his actions.

21

22

23

24

25

This principle is reinforced where the Court defined "willfully" in a firearms context to require that the defendant "acted with knowledge that his conduct was unlawful."[12] The Court specifically rejected the notion that mere awareness of the conduct was sufficient — a defendant must also understand that the conduct violates the law. Accordingly, when analyzing both *Staples* and *Bryan*, a *defendant who completes a firearm application with incorrect information, but who*

26

27

28

---

[11] *Staples v. United States*, 511 U.S. 600 (1994)
[12] *Bryan v. United States*, 524 U.S. 184 (1998)

*sincerely believes he is legally eligible due to having passed background checks, lacks the culpable mental state necessary for conviction.* **[Emphasis Added]**.

> **D.    Thurtle's Good-Faith Reliance on Government-Issued Documentation and Transparent Identification Undermines the Government's Theory of Intent**

Here, the Government argues the theory of knowing falsification.[13] However, *Brebner* is clearly distinguishable. In that case, the defendant explicitly denied felony convictions on a federal firearms form despite knowing of his prior convictions and having no reasonable basis to believe those convictions had been expunged or rendered non-disqualifying. Moreover, there was no evidence that Brebner had relied on any Government approval or oversight in concluding he was eligible to possess a firearm.

By contrast, Thurtle applied for and was issued a Nevada concealed carry permit after providing accurate and complete identifying information — including his full legal name, date of birth, social security number, and residential history. He then used that same information when purchasing a firearm through a licensed dealer. The issuance of a CCW permit in Nevada triggers a state background check process under NRS § 202.3657, which, if properly conducted, should have revealed any disqualifying felony convictions. Additionally, federal law exempts permit holders from a second background check under 27 C.F.R. § 478.102(d), reinforcing the applicant's reasonable reliance on the initial approval.

This reliance was not speculative or self-serving — it was based on the state's own affirmative conduct. As the Ninth Circuit emphasized, due process prohibits criminal conviction where a Government official leads a person to believe that certain conduct is legal.[14] While the Government argues there was no "affirmative misstatement" here, the act of issuing a CCW permit after a background check — coupled with a firearm purchase from a federally licensed dealer — reasonably suggests to a layperson that they are not a "prohibited person."

---

[13] *United States v. Brebner*, 951 F.2d 1017 (9th Cir. 1991)
[14] *United States v. Tallmadge*, 829 F.2d 767 (9th Cir. 1987)

## I. The Entrapment by Estoppel Defense Remains Viable When There Is Reasonable Reliance on Apparent Government Authority

While courts have rejected state firearm licenses as automatic shields to § 922(g) charges, neither case forecloses a fact-specific entrapment by estoppel defense when the defendant reasonably relies on Government action or misleading conduct. These decisions are distinguishable.[15] [16]

## II. Limited Holding in Hancock

In *Hancock*, the Ninth Circuit found that the defendant knew he was a convicted felon, had previously been denied a permit, and lacked any affirmative assurance from a government official that his possession of a firearm was lawful:

> "The doctrine of entrapment by estoppel applies only if an authorized Government official affirmatively told the defendant that the proscribed conduct was legal."[17]

*Hancock* involved no such affirmative communication by any official. By contrast, if a state issues a valid CCW permit despite full knowledge of the applicant's disqualifying conviction, the case becomes about Government conduct that would reasonably induce reliance—especially if the state performs a background check revealing the conviction.

## III. Napier Also Relies on Absence of Federal Actor or Clear Misrepresentation

*Napier* holds that a state official's issuance of a permit cannot immunize someone from federal prosecution, but also notes that:

> "The entrapment by estoppel defense is limited to a defendant's reasonable reliance on an official statement by someone empowered to render the conduct legal."[18]

This leaves open the possibility that state officials may, in specific contexts, act with apparent federal authority, especially when they administer federally relevant firearm regulation (e.g., issuing permits that intersect with federal prohibitions under § 922).

---

[15] *United States v. Hancock*, 231 F.3d 557, 562 (9th Cir. 2000)
[16] *United States v. Napier*, 233 F. 3d 394, 400 (6th Cir. 2000)
[17] *Hancock*, 231 F.3d at 562
[18] *Napier*, 233 F.3d at 400

1

2

### IV. Ninth Circuit Recognizes Apparent Authority as Sufficient for Entrapment by Estoppel

3

4

In *Tallmadge*, the court explicitly recognized that entrapment by estoppel applies when an official—federal or appearing to act with federal authority—misleads the defendant:

5

6

> "A Government official need not have actual authority; apparent authority is enough to support the defense."[19]

7

8

9

If a Nevada sheriff (or other state licensing official) had access to Thurtle's federal disqualifying conviction and still issued a permit, this constitutes apparent Governmental authorization, on which a layperson could reasonably rely.

10

11

### V. Courts Have Dismissed Indictments Based on Entrapment by Estoppel Where Government Conduct Was Affirmative and Misleading

12

13

14

15

Other courts have found that entrapment by estoppel can bar § 922(g) prosecutions where (1) the defendant reasonably relied on affirmative Government statements; (2) the Government created the impression of legality, especially through licensing or prior approval.[20] [21] These cases support a fact-sensitive inquiry, not a categorical rejection like *Hancock* or *Napier* suggest.

16

17

18

19

Neither *Hancock* or *Napier* do categorically preclude an entrapment by estoppel defense under § 922(g); rather, they emphasize the defense's limited scope. Where a defendant—like Thurtle—was affirmatively licensed by the state despite known legal disqualifications, and relied in good faith on that official action, the defense remains legally cognizable.

20

21

### VI. Courts Have Repeatedly Warned Against Criminalizing Errors That Result from Governmental Oversight

22

23

The court has held that the Government cannot impose criminal liability for a misstatement unless the evidence clearly shows that the defendant was aware of the legal disqualification.[22] The

24

25

26

27

28

---

[19] *Tallmadge*, 829 F.2d at 774

[20] *United States v. Etheridge*, 932 F.2d 318, 320 (4th Cir. 1991) (holding estoppel applicable where defendant reasonably relied on a military officer's statement regarding gun possession);

[21] *United States v. Brady*, 710 F. Supp. 290 (D. Colo. 1989) (dismissing indictment under § 922(g) where FBI agent misled the defendant about his legal status).

[22] *United States v. Ortiz*, 318 F.3d 1030 (11th Cir. 2003)

court emphasized that systemic failures in background check processes should not be used as a basis to impute knowledge to the defendant.

Similarly, the court reversed a § 922(a)(6) conviction where the Government failed to prove that the defendant understood that his prior conviction disqualified him.[23] The court stressed the importance of actual, subjective knowledge in satisfying the "knowingly" requirement.

In the present case, Thurtle's consistent and accurate disclosure of his identity, coupled with his successful navigation of both state and federal vetting processes, negates any inference that he intentionally deceived or sought to mislead. Unlike *Brebner*, where the defendant concealed his identity and had direct notice of his disqualification, Thurtle made no attempt to hide his background — he simply relied, perhaps mistakenly, on the legitimacy of the approvals he received.

Thurtle's actions, viewed in light of *Staples*, *Bryan*, *Brebner*, and *Tallmadge*, do not rise to the level of knowing or willful criminal conduct required under 18 U.S.C. § 922(a)(6). He provided full identifying information, relied on Government-issued approvals, and acted in good faith based on the belief that he was legally permitted to possess a firearm. Criminal liability should not attach where the Government itself failed to act on readily available information. The statute does not criminalize mistakes — it punishes deception. No such deception has been proven here.

**E.    The Burden of Due Diligence Falls on the Issuing Agency and the Government**

The Government contends that Thurtle knowingly lied on both his Nevada CCW application and BATF Form 4473. However, this claim oversimplifies the statutory framework and overlooks the controlling legal principle that the burden to verify eligibility rests squarely with the Government and its issuing agencies—not with applicants, especially when they provide complete and accurate personal identifying information.

**I.    The Supreme Court in *Rehaif* Requires the Government to Prove Actual Knowledge of Prohibited Status**

The Supreme Court has held that for a conviction under 18 U.S.C. § 922(g), the Government must prove that the defendant knew both that he possessed a firearm and that he

---

[23] *United States v. Smith*, 940 F.2d 710 (1st Cir. 1991),

belonged to the class of persons prohibited from possessing a firearm.[24] This knowledge requirement applies to each element of the offense and must be established beyond a reasonable doubt.

In Thurtle's case, this means the Government must prove not only that he possessed the firearm, but that he actually knew he was legally prohibited from doing so based on his prior felony convictions. It is insufficient to argue that he made a false statement on a form without establishing that he understood the legal significance of his prior record—particularly where he had passed a background check and received a state-issued permit.

This distinction is critical. *Rehaif* emphasizes that criminal liability cannot be based on mere technical noncompliance but must rest on a defendant's actual knowledge of his disqualifying status. The Court in *Rehaif* explicitly rejected the notion that the Government could dispense with proving a defendant's state of mind, thereby reaffirming the core due process principle that *mens rea* is essential in criminal prosecutions involving firearms.

## II. Accurate Disclosure Shifts the Burden to Government Agencies to Conduct Background Checks

When an applicant such as Thurtle provides his full legal name, date of birth, social security number, and previous addresses on both the CCW application and BATF Form 4473, he has discharged his responsibility to submit truthful personal information. At that point, the burden shifts to the Government to perform the necessary investigative due diligence.

This principle has been recognized implicitly by courts in several jurisdictions. The Eleventh Circuit has acknowledged that failures in the Government's background check process cannot substitute for proof of a defendant's criminal knowledge.[25] The Court warned that a defendant should not bear the consequences of administrative error or systemic oversight, especially when acting in apparent good faith.

---

[24] *Rehaif v. United States*, 139 S. Ct. 2191 (2019)
[25] *United States v. Ortiz*, 318 F.3d 1030 (11th Cir. 2003)

Similarly, the Fifth Circuit held that the BATF and other federal agencies bear the burden of verifying that applicants for firearms are not prohibited persons.[26] The court emphasized that where the Government possesses all necessary data to detect disqualifying conditions but fails to act on that information, it cannot later use its own oversight as a basis for criminal prosecution.

### III.    Administrative Oversight Is Not Equivalent to Willful Deception

The Ninth Circuit has repeatedly drawn a line between deliberate deception and unintentional, bureaucratic failure. Additionally, the court found that where a Government official affirmatively misleads a person into believing they are lawfully permitted to possess a firearm, a conviction would violate due process.[27] While Thurtle may not have received an explicit assurance from a single official, he did receive a CCW permit issued after a state-run background check and was permitted to purchase a firearm by a federally licensed dealer.

As the court explained in *Tallmadge*, Government actors are presumed to have superior access to criminal history databases, such as those maintained through the NCIC and NICS systems. When those actors issue permits or approves a transaction without flagging prior disqualifying convictions, it is unreasonable—and unconstitutional—to then fault the applicant for relying on the apparent legality of his conduct.

To hold otherwise would invite due process violations by allowing criminal prosecutions based not on a defendant's state of mind, but on the state's administrative failure. The Ninth Circuit has held that in "convictions based on the Government's own misleading actions offend the fundamental fairness required by due process."[28]

### IV.    Public Policy Requires the Government to Shoulder the Burden of Eligibility Verification

From a policy standpoint, placing the full burden on lay applicants to self-assess their firearm eligibility—including the legal implications of prior convictions—creates an unreasonably high and unjust standard. Unlike Government agencies, applicants do not have access to

---

[26] *United States v. Gant*, 691 F.2d 1159 (5th Cir. 1982)
[27] *United States v. Tallmadge*, 829 F.2d 767 (9th Cir. 1987)
[28] *Raley v. Ohio*, 360 U.S. 423 (1959)

comprehensive criminal history databases. Nor are they expected to possess legal expertise sufficient to interpret complex eligibility rules or to understand the lifetime impact of prior felony pleas, especially when some may have been pled down, suspended, or served long ago.

Moreover, background checks are not a mere procedural formality. They are the principal mechanism through which the Government ensures compliance with firearm laws. As such, they must be treated as a Governmental responsibility—not as a checkbox to be waived through unless an applicant self-incriminates. To allow the state to ignore its own verification processes and later impose criminal penalties undermines both the legitimacy and reliability of the background check system itself.

Thurtle provided all necessary identifiers to enable the state and federal authorities to detect his disqualifying convictions. He was issued a CCW permit and allowed to purchase a firearm without objection. If there was an error in that process, it lies with the Government—not the applicant. Criminal liability under 18 U.S.C. § 922(g)(1) or § 922(a)(6) requires more than a technical misstatement. It requires actual knowledge, intent, and willful violation—elements that are absent here. As such, holding Thurtle criminally liable for the Government's failure to properly conduct a background check contradicts both statutory law and fundamental principles of fairness enshrined in due process.

### F.  The Government Cannot Shift the Consequences of its Own Oversight

The Government in their Response now attempts to shift criminal liability onto Thurtle for its own procedural deficiencies in issuing a concealed carry permit and permitting a firearm purchase through a federally licensed dealer. However, Thurtle's conduct does not reflect intentional wrongdoing or deceit. Rather, it reflects reliance on state and federal processes that are specifically designed to screen for prohibited persons. The issuance of a CCW license and the authorization of a firearm sale after background checks forecloses any fair inference that Thurtle acted with knowledge or willfulness in violation of 18 U.S.C. §§ 922(g)(1) or 922(a)(6).

I.   ***United States v. Ortiz* and the Duty of the Government to Act on Its Own Information**

The Eleventh Circuit directly addressed the Government's obligation to act on information available to it.[29] Ortiz had been convicted of a felony, but the Government failed to detect that conviction in its systems. After he was allowed to complete a firearm purchase, the Government later prosecuted him under § 922(g)(1).

The Eleventh Circuit rejected the Government's attempt to use its own negligence as evidence against Ortiz. The court held that "[t]he Government cannot avoid its own procedural failures by assigning criminal liability to individuals who have no actual knowledge that they are prohibited from firearm possession."[30]

In Thurtle's case, the same rationale applies. He was issued a state CCW permit and permitted to purchase a firearm after being screened through existing systems. The fact that the Government failed to detect his prior convictions—despite being in possession of all relevant identifiers—cannot now be used to manufacture criminal intent or establish the *mens rea* required for conviction.

II.  ***United States v. Gant* and the Government's Non-Delegable Duty to Screen Applicants**

The Fifth Circuit considered a similar situation in which the BATF approved firearms applications despite the applicant having a potentially disqualifying history.[31] The court held that the agency had a non-delegable duty to screen applicants based on the information it received.

The court emphasized that "[i]f the Government intends to prosecute based on status, it must ensure its systems accurately reflect disqualifying events."[32] The court further explained that applicants who rely on Government approvals in good faith should not be retroactively penalized absent "clear and convincing evidence of deliberate misrepresentation or concealment."

---

[29] *United States v. Ortiz*, 318 F.3d 1030 (11th Cir. 2003)
[30] *Id*. at 1035.
[31] *United States v. Gant*, 691 F.2d 1159 (5th Cir. 1982)
[32] *Id*. at 1162.

Here, Thurtle provided his full identifying information to both the state (for the CCW permit) and to a federal firearm licensee via BATF Form 4473. He did not use an alias, omit material facts, or mislead authorities about his identity. His reliance on the state-issued permit and federally processed sale was reasonable and consistent with lawful behavior. Any failure to detect his disqualifying convictions lies with the agencies that processed his applications—not with Thurtle.

### III.   *United States v. Tallmadge* and the Due Process Bar Against Misleading Government Conduct

The Ninth Circuit's decision affirms the principle that the Government may not punish someone who has been affirmatively misled by its own actions or omissions.[33] In that case, the court held that due process prohibits criminal convictions where the defendant reasonably relied on misleading information provided—implicitly or explicitly—by Government officials.

While Thurtle may not have received direct oral assurances, he was issued a permit by the state of Nevada, which he understood to be confirmation of his eligibility. The background check exemption under 27 C.F.R. § 478.102(d) further supports this understanding, as it allows CCW permit holders to bypass a second NICS check at the point of sale. Thurtle's reliance on this process cannot be divorced from the Government's role in creating the very impression that he was legally eligible to possess a firearm.

As in *Tallmadge*, where the defendant relied on the official conduct of Government actors, Thurtle's possession of the firearm was grounded in apparent Governmental authorization—not in defiance of it.

### IV.   Additional Supporting Authority

Other courts have echoed the importance of distinguishing between knowing violations and administrative errors. The First Circuit reversed a conviction under § 922(a)(6), holding that the prosecution must prove that the defendant knew his prior conviction disqualified him.[34] The

---

[33] *United States v. Tallmadge*, 829 F.2d 767 (9th Cir. 1987)
[34] *United States v. Smith*, 940 F.2d 710 (1st Cir. 1991)

1    court stated: "It is not enough for the Government to show that the defendant made a false

2    statement; it must prove that he knew it was false."

3        Similarly, the court recognized that reliance on state-issued permits or expungements, even

4    if later determined to be legally erroneous, could defeat the Government's claim of willfulness or

5    knowing misconduct—especially where no intent to deceive was proven.[35]

6        **V.    Administrative Failures Do Not Establish *Mens Rea***

7        Thurtle's situation is emblematic of why firearms regulations must be enforced in a manner

8    consistent with due process and basic fairness. He provided all required identifying information,

9    was issued a CCW permit by the state, and passed a federal sale process through a licensed dealer.

10   These facts do not support a conclusion of willful criminal conduct. Rather, they reflect a good-

11   faith reliance on a government process that failed in its duty to screen properly.

12       As the courts in *Ortiz, Gant, Tallmadge*, and others have recognized, the Government may

13   not bootstrap its own failure to investigate into criminal culpability for the very person it failed to

14   regulate. The burden of verification lies with the issuing agencies. When that burden is not met, it

15   cannot become the basis for criminal liability absent proof of actual knowledge and deliberate

16   deception—neither of which exists here.

17       **G.    Due Process Bars Prosecution Where the Government, Through Official
            Actions or Omissions Induces a Reasonable Belief that Conduct is Lawful**
18

19       Although the Government summarily dismisses the applicability of the doctrine of

20   entrapment by estoppel, it fails to engage with the broader due process implications inherent in

21   firearm prosecutions involving individuals who have affirmatively passed both state and federal

22   background checks and received Government-issued firearm credentials. In such cases, the

23   Government may not prosecute a defendant who reasonably relied on official actions that

24   conveyed — whether explicitly or implicitly — that the conduct in question was lawful.

25

26

27

28

---

[35] *United States v. Strzelczyk*, 331 F.3d 697 (8th Cir. 2003)

I. ***United States v. Tallmadge***: **Due Process Prohibits Conviction Based on Government Misleading Conduct**

Here, the Ninth Circuit's decision is controlling.[36] There, the defendant — a convicted felon — was told by a federal official that he was no longer prohibited from possessing firearms. Relying on that assurance, he later purchased a firearm and was prosecuted under 18 U.S.C. § 922(g)(1). The court reversed his conviction, holding that due process bars prosecution when the Government, through an official act, affirmatively misleads a person into believing that certain conduct is lawful. The court emphasized that this principle derives from fundamental fairness.[37] [38]

Though Thurtle may not have received a verbal assurance from a specific official, the issuance of a Nevada CCW permit — after completion of a background check — and the subsequent approval of a firearm purchase via BATF Form 4473, together function as de facto representations by the Government that he was legally permitted to possess a firearm. These actions, taken by agencies charged with enforcing firearms laws, provide exactly the type of affirmative Governmental conduct that the Ninth Circuit in Tallmadge recognized as giving rise to due process protections.

II. **Government Action and Regulatory Exemptions Reinforce Apparent Legality**

The argument that Thurtle's reliance was unreasonable fails when viewed through the lens of the regulatory scheme that the Government itself created. Under 27 C.F.R. § 478.102(d)(1), persons possessing valid concealed carry permits are exempt from undergoing a separate background check at the time of firearm purchase — so long as the issuing state's procedures include a background check. Nevada is one such state.

This exemption constitutes a regulatory acknowledgment that individuals who possess valid CCW permits have been vetted and are not "prohibited persons." Therefore, the issuance of a permit is not merely ministerial — it has the force and effect of a federal exemption from

---

[36] *United States v. Tallmadge*, 829 F.2d 767 (9th Cir. 1987)
[37] *Raley v. Ohio*, 360 U.S. 423 (1959)
[38] *Cox v. Louisiana*, 379 U.S. 559 (1965).

subsequent criminal liability. Where a defendant relies on such formal Government actions, courts have recognized that due process concerns may override the elements of a criminal charge.

This reasoning is echoed, where the Supreme Court stated that "regulatory agencies cannot lead those they regulate to believe conduct is permissible and later penalize them for engaging in that conduct."[39] This principle applies equally to individuals who rely on Government-issued firearm licenses, which are the product of formalized legal review and vetting.

## III. The Government's Attempt to Shift Responsibility Is Unavailing Under Constitutional Standards

The Government's response attempts to shift blame for the erroneous permit issuance to the LVMPD, suggesting that the failure lies at the state level. However, this argument disregards the broader statutory structure in which the BATF plays a central role in approving firearms transfers under federal law.

Thurtle submitted BATF Form 4473, provided accurate identifying information, and was allowed to complete a purchase from a federally licensed dealer. The BATF is responsible for maintaining and overseeing NICS and bears the ultimate burden to prevent firearm sales to prohibited persons. Further, Thurtle applied for, was subject to a criminal background check, and then received a CCW from LVMPD. If the system failed to flag Thurtle's prior convictions, that is a failure of federal enforcement — not an act of deception by the defendant.

Courts have consistently recognized that due process prohibits criminal liability based on the Government's failure to detect information it possessed. As the Eleventh Circuit held, an individual cannot be faulted for the Government's failure to act on readily available red flags, particularly when the individual has no intent to deceive and relied in good faith on Government determinations.[40]

Similarly, the court stated that the BATF "must ensure its systems accurately reflect disqualifying events" before holding an applicant criminally liable.[41] In that case, as here, the

---

[39] *United States v. Pennsylvania Industrial Chemical Corp.*, 411 U.S. 655 (1973)
[40] *United States v. Ortiz*, 318 F.3d 1030 (11th Cir. 2003)
[41] *United States v. Gant*, 691 F.2d 1159 (5th Cir. 1982)

Government failed to act on information it had in its possession. The court cautioned that allowing criminal prosecutions under such circumstances would unfairly penalize individuals for regulatory oversight failures.

### IV.   The Absence of Government Notification Undermines the Knowledge Element

It is also significant that at no point did any federal or state law enforcement agency ever contact Thurtle to inform him of his prohibited status, despite having access to his application materials and identifying information on multiple occasions. Not during the CCW application process, not during the background check, and not at the time of sale did any agency intervene or flag an issue.

As the Ninth Circuit observed, the entrapment by estoppel defense fails when the defendant acts with clear knowledge of their prohibited status.[42] In contrast, the Government's inaction here reinforces the reasonableness of Thurtle's belief that he was lawfully permitted to possess a firearm. *Brebner* only strengthens Thurtle's case when viewed in proper contrast: unlike *Brebner*, who had no basis to believe he was eligible, Thurtle had the benefit of state and federal approvals which suggested legal compliance.

Thurtle submitted to and complied with every Government-imposed procedural safeguard required to purchase and carry a firearm. He did not circumvent the law — he followed it. The issuance of a CCW permit and the authorization of a firearm sale under Form 4473 were official acts that signaled to any reasonable person that his conduct was lawful.

Under *Tallmadge, Raley, Ortiz, and Gant*, the Government cannot now retroactively prosecute Thurtle for conduct it affirmatively facilitated and authorized.[43] To do so would violate fundamental due process principles, particularly where the defendant had no actual knowledge of his prohibited status and relied in good faith on the Government's own determinations.

Accordingly, the doctrine of entrapment by estoppel, as grounded in the Constitution's guarantee of due process, applies here, and Thurtle's prosecution should be barred as a matter of law.

---

[42] *United States v. Brebner*, 951 F.2d 1017, 1025–26 (9th Cir. 1991)
[43] *Id.*

## CONCLUSION

For the aforementioned reasons, the undersigned on behalf of Mr. Thurtle, respectfully requests that this Honorable Court grant the relief sought in the Motion. Because the Defendant was reasonably and affirmatively led to believe he was not prohibited, Count One of the Indictment fails as a matter of law and must be dismissed. The prosecution further offends due process and is barred under the doctrine of entrapment by estoppel.

DATED this 3RD day of June 2025.

**HITZKE & FERRAN LLP.**

/s/ Erick M. Ferran, Esq.
ERICK M. FERRAN, ESQ**.**
Nevada State Bar No. 9554
2110 East Flamingo Road, Suite 206
Las Vegas, Nevada 89119
*Telephone No.: (702) 476-9668*
*Facsimile No.: (702) 462-2646*
*erick.ferran@hitzkelaw.com*
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that I am an attorney of counsel with HITZKE & FERRAN LLP., and that on this 3RD day of June 2025, I did cause a true and correct copy of:

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

to be served via electronic service by the U.S. District Court CM/ECF system to the parties on the Electronic Filing system in this action, including:

Lauren Ibanez, Esq.
Assistant United States Attorney
United States Attorney's Office
501 South Las Vegas Boulevard
Las Vegas, Nevada 89101
Lauren.Ibanez@usdoj.gov

/s/ Erick M. Ferran, Esq.
*An employee of Hitzke & Ferran LLP.*