TODD BLANCHE
Deputy Attorney General of the United States
SIGAL CHATTAH
First Assistant United States Attorney
Nevada Bar Number 8264
LAUREN M. IBANEZ
Assistant United States Attorney
District of Nevada
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
Phone: (702) 388-6336
Lauren.Ibanez@usdoj.gov
*Attorneys for the United States*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TIMOTHY THURTLE,<br><br>Defendant. | Case No. 2:24-CR-0229-APG-NJK<br><br>**Government's Response to Defendant's Sentencing Memorandum [ECF No. 69]** |

The United States of America, through the undersigned, submits the following Sentencing Memorandum for the Court's review prior to sentencing.

### I.   Background and Procedural Background

On April 10, 2024, Las Vegas Metropolitan Police Department (LVMPD) officers responded to a 9-1-1 call regarding a road rage incident. *See* Presentence Investigation Report ("PSR") ¶7. The victim indicated that a motorcyclist—Defendant Timothy Thurtle— followed him, threatened him, and appeared to brandish a firearm at one point. *Id*. The victim further relayed that Thurtle even grabbed the door handle of his vehicle to open it—all while driving. *Id*. LVMPD officers located Thurtle wearing a full Pagan's Motorcycle Club vest with a loaded

1  Springfield Armory Hellcat, 9mm pistol in a concealed holster as well as two additional
2  magazines on the other side of his vest. PSR ¶8. At the time of this road rage incident, Thurtle
3  had sustained two felony convictions: Theft on or about March 22, 2004, in Clark County,
4  Nevada in case number C178292; and Assault with a Deadly Weapon on or about June 5,
5  2007, in Clark County, Nevada, in case number C230919. PSR ¶¶ 30, 32.
6     On October 8, 2024, a federal criminal indictment was filed, charging Thurtle with one
7  count of Possession of a Firearm by a Prohibited Person in violation of 18 U.S.C. §§922(g)(1)
8  and 924(a)(8). ECF No. 1. On September 5, 2025, Thurtle pleaded guilty to the criminal
9  indictment without a plea agreement. ECF No. 59.
10              II.    Guideline Calculations
11    The Presentence Investigation Report ("PSR") correctly calculates a base level offense
12  of 14 pursuant to U.S.S.G. § 2K2.1(a)(6)(A). PSR ¶ 17. Probation applied a four-level
13  enhancement because Thurtle used or possessed the firearm in connection with another felony
14  offense of felony assault with a deadly weapon pursuant to U.S.S.G. §2K2.1(b)(7)(B). PSR
15  ¶ 18. The PSR calculated the total offense level to be 18, coupled with a criminal history
16  category of I, which results in an advisory guideline range of 27 to 33 months. PSR ¶ 66.
17  Probation recommends a downward variance to 18 months. PSR, p. 19.
18    The government concurs with Probation's calculation of a base level offense of 14 and
19  the additional 4 level enhancement pursuant to §2K2.1(a)(4)(B) and §2K2.1(b)(7)(B). The
20  government also concurs with Probation that a three-level deduction for acceptance of
21  responsibility does *not* apply pursuant to §3E1.1, comment (n. 1(B)). *See* PSR p. 24. The
22  government, however, objected to the calculation of Thurtle's criminal history in that two-
23  points should apply for the recent April 10, 2024, misdemeanor assault conviction. Probation
24  noted that conviction was part of conduct related to the instant offense (and included as an

enhancement pursuant to §2K2.1(b)(7)(B)) and therefore does not score criminal history points pursuant to §4A1.2(a)(1). *Id*. Accordingly, the government contends that if this Court does not apply the four-level enhancement pursuant to §2K2.1(b)(7)(B), then two-levels should be applied to Thurtle's criminal history.

The government recommends the Court sentence Thurtle to 30 months imprisonment with 3 years of supervised release to follow.

### III. Argument

#### A. Term of Imprisonment

The goal of sentencing is to "'impose a sentence sufficient but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed . . . correctional treatment." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting 18 U.S.C. § 3553(a)). In fashioning a sentence, the Court considers the "the nature and circumstances of the offense and the history and characteristics of the defendant," "the need for the sentence imposed," "the kinds of sentences available," the applicable sentencing guideline range, any pertinent policy statement, sentences imposed on other similarly situated defendants, and the need for victim restitution. *See* 18 U.S.C. § 3553(a).

Thurtle is no stranger to the criminal justice system. By his own actions, it is evident that Thurtle's prior state sentences have done nothing to deter him from engaging in criminal activity. His actions and history demonstrate he poses a high risk to recidivate. Here, a sentence of 30 months is appropriate for various reasons. First, given the nature of the offense of Thurtle's possession of a firearm shows an alarming disregard for public safety. Second, Thurtle's criminal conduct and assaultive behavior demonstrates that the threat of imprisonment has not been sufficient to deter him from committing future crimes.

3

The nature of the offense demands a sentence that reflects the seriousness of the crime. Thurtle's criminal acts reflect a serious disregard for both law and public safely as the nature and circumstances of this offense elevate it beyond routine violation. Thurtle argues that his conduct here is "non-violent, isolated, and devoid of any intent to harm" and therefore a sentence of supervised release is warranted. ECF No. 69. This could not be further from the truth. At the time of the offense, not only was Thurtle illegally possessing a firearm, but he was also engaging in threatening behavior putting multiple lives at risk. Thurtle followed another driver and threatened him, creating a volatile and dangerous situation. Thurtle may be correct in that there was no "discharge of a firearm" but that does not negate the fact that there was a serious threat to the driver and to the safety of the general public. *Id*. Road rage incidents are inherently unpredictable and often escalate into violence—especially here in the Las Vegas community.

To make the situation more dangerous, Thurtle possessed a loaded firearm at the time. The presence of a firearm in this context, especially in an emotionally charged road rage incident, amplifies the potential for violent escalation. The community deserves to be protected from individuals like Thurtle whose criminal actions have shown a consistent pattern of escalating danger to public safety. Every illegal firearm in the hands of a prohibited person, and even more so a person with a history of assaultive behavior, has the potential to create harm. Thurtle claims that the "firearm at issue was lawfully purchased" and he possessed a valid Nevada Concealed Carry Weapons (CCW) Permit at the time. ECF No. 69. Thurtle, however, lied on his CCW application and the ATF 4473 firearm when purchasing said firearm when he indicated he did not have any prior felony convictions. *See* PSR ¶9. The CCW was issued in error and the permit was revoked. *Id*. These facts do not "distinguish him from offenders acting with criminal intent." ECF No. 69. If anything, this demonstrates Thurtle's intent to deceive

and skirt the law. A sentence of supervised release would have the opposite effect of what Thurtle suggests—it would fail to safeguard the public and undermine the purpose of deterrence.

As Probation noted, the instant offense involved Thurtle "committing armed, assaultive conduct." PSR, p. 20. He also displayed "a pattern of engagement in assaultive conduct" when his pretrial release was revoked. *Id*. His last conviction, albeit older, also involved assault. *Id*. Thurtle's criminal history is underrepresented because his prior convictions are dated. However, these older convictions are still highly relevant as they demonstrate a longstanding pattern of disregard for the law. The fact that Thurtle continues to engage in criminal activity despite previous convictions show that deterrence has not been effective for Thurtle.

Moreover, while on pre-trial release from the instant case, Thurtle again engaged in criminal activity. As part of his pre-trial release conditions, Thurtle was prohibited from possessing any weapons and precluded from having contact with any outlaw motorcycle gang members outside business-related purposes. However, just several months later, Thurtle was arrested in California and charged with Robbery, Assault with a Deadly Weapon with Force: possible Great Bodily Injury, Conspiracy to Commit Crime, and Vandalism ($400 or more). PSR ¶4. In that case, Thurtle was accused of associating with outlaw motorcycle gang members, who possessed firearms, and assaulted an individual who needed to be hospitalized as a result. *Id*. That case is still pending. Thurtle was "given the benefit of pretrial release" and chose to squander that opportunity. PSR, p. 20. Thurtle's actions demonstrate that he has little respect for the law, disregards the Court's conditions of release, and clearly poses a significant risk of reoffending.

Given the nature of the offense and Thurtle's demonstrated willingness to repeatedly engage in violent confrontations (the road rage incident and the pending California case), a

sentence of 30 months is sufficient but not greater than necessary to achieve the goals of sentencing.

### B. Supervised Release

In terms of supervised release, the government concurs with the recommendation of the PSR, that Thurtle be subjected to a three-year term of supervised release. In addition to keeping the community safe, supervised release helps to address the concerns noted in the PSR. The government submits that any likelihood that Thurtle has to re-offend will be significantly reduced if he remains accountable under supervision. Thurtle already demonstrated his inability to refrain from criminal activity when he violated the conditions of his pre-trial release. Supervised release will hold Thurtle accountable and provide supervision to hopefully thwart any future criminal behavior. The government further submits that all of the recommended conditions are reasonably related to the goal of deterrence, protection of the public, rehabilitation of the defendant, and involve no greater deprivation of liberty than is reasonably necessary for purposes of supervised release. Given the significant offense to which Thurtle pleaded guilty, three years of supervised release is appropriate.

### IV.   Conclusion

The government respectfully requests that this Honorable Court impose a sentence of 30 months imprisonment, followed by a three-year term of supervised release.

DATED:  December 1, 2025.

Respectfully submitted,

SIGAL CHATTAH
First Assistant United States Attorney

*/s/ Lauren M. Ibanez*

Lauren M. Ibanez
Assistant United States Attorney